Mark A. Weisbart
The Law Offices of Mark A. Weisbart
12770 Coit Road, Suite 541
Dallas, Texas 75251
Telephone (972) 628-3694
Facsimile (972) 628-3687

Attorneys for Linda S. Payne,
Chapter 7 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| INTEGRA HOSPITAL PLANO LLC | § § § | Case No. 08-42998 |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| LINDA S. PAYNE, TRUSTEE | § § | |
| Plaintiff, | § § | |
| vs. | § § | Adversary No. 10-04243 |
| SIMBA VENTURES HOLDINGS, LTD., SIMBA VENTURES GP, LLC, DAVID LEBLANC, HEDY LEBLANC, CRL FAMILY TRUST, WHITAKER FAMILY TRUST, WEL FAMILY TRUST, | § § § § § § § § | |
| Defendants | § | |

## SECOND AMENDED COMPLAINT

**TO THE HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

LINDA S. PAYNE, Chapter 7 Trustee ("Trustee") for Integra Hospital Plano, L.L.C. ("IHP" or "Debtor") files this Second Amended Complaint to Avoid Preferential and/or Fraudulent Transfers and in support thereof states:

# I.

# PARTIES

1.      Plaintiff LINDA S. PAYNE is the Chapter 7 Trustee ("Trustee") for Integra Hospital Plano, LLC ("IHP"), Integra Hospital Baton Rouge, LLC ("IHBR"), Integra Hospital Management, LLC ("IHM"), and Integra Healthcare Holdings, Ltd. ("IHH") (collectively the "Debtors").

2.      Defendant Simba Ventures Holdings, Ltd., was a Texas Limited Partnership[1]. Upon information and belief, Simba Ventures Holdings, Ltd., owned 99% interest in Debtor IHH, which held 60% of the membership interests of IHP and 100% of the membership interests of IHBR. Defendant Simba Ventures Holdings, Ltd., is an insider of Debtors within the meaning of 11 U.S.C. § 101(31). Said Defendant has been served with process and has entered an appearance in this proceeding.

3.      Upon information and belief, Defendant Simba Ventures GP, LLC, was a Texas limited liability company[2]. Defendant is the General Partner of Simba Ventures Holdings, Ltd. Said Defendant has been served with process and has entered an appearance in this proceeding.

4.      Defendant David LeBlanc is an individual who resides in Collin County, Texas. LeBlanc held 12% of the limited partnership interests in Simba Ventures Holdings, Ltd., which held 99% of the limited partnership interests in IH Holdings, which held 60% of the membership interests of IHP and 100% of the membership interests of IHBR. LeBlanc was the Chairman of the Board of Managers of IHH, IHP, IHBR and Integra Healthcare GP, LLC ("IH GP"), which was the general partner of IHH. LeBlanc was also the Chairman of the Board of Managers of

---

[1] Upon information and belief, Simba Ventures Holdings, Ltd. forfeited its existence or is a defunct legal entity.
[2] Upon information and belief, Simba Ventures GP, LLC forfeited its corporate existence or is a defunct legal entity.

IHM, which managed the operations of IHP and IHBR. Through his ownership and management positions with the Debtors and their affiliates, including Simba Ventures Holdings, Ltd., controlled the operations of the debtors. LeBlanc is an insider of Debtors within the meaning of 11 U.S.C. § 101(31). Upon information and belief, LeBlanc authorized and/or participated in misrepresentations and omissions concerning the debtors' performance and operations. Upon further information and belief, Le Blanc authorized the transfers to Simba Ventures Holdings with the actual intent to hinder, delay or defraud creditors of the debtors. Upon further information and belief, LeBlanc knew the Debtor received less than a reasonably equivalent value in exchange for such transfer; and was insolvent on the date that such transfer was made, or became insolvent as a result of such. Said Defendant has been served with process and has entered an appearance in this proceeding.

5.  Defendant Hedy LeBlanc is an individual who resides in Collin County, Texas. Upon information and belief, Hedy LeBlanc is a general partner in Integra Healthcare GP, LLC, the general partner in Debtor IHH. The remaining Debtors are wholly owned by Debtor IHH. Upon information and belief Defendant Hedy LeBlanc is married to Defendant David LeBlanc. Through his ownership and management positions with the Debtors and their affiliates, including Simba Ventures Holdings, Ltd., David LeBlanc controlled the operations of the debtors. LeBlanc is an insider of Debtors within the meaning of 11 U.S.C. § 101(31). Upon information and belief, LeBlanc authorized and/or participated in misrepresentations and omissions concerning the debtors' performance and operations. Upon further information and belief, Le Blanc authorized the transfers to Simba Ventures Holdings with the actual intent to hinder, delay or defraud creditors of the debtors. Upon further information and belief, LeBlanc knew the Debtor received less than a reasonably equivalent value in exchange for such transfers; and was insolvent on the

date that such transfers were made, or became insolvent as a result of such transfers. Said Defendant has been served with process and has entered an appearance in this proceeding.

6. Upon information and belief, Defendant CRL Family Trust is a limited partner in Defendant Simba Ventures Holdings, Ltd. Upon information and belief Simba Ventures Holdings, Ltd., is a defunct legal entity. Thus, defendant is liable as partner or principal of Simba Ventures. Said Defendant has been served with process and has entered an appearance in this proceeding.

7. Upon information and belief, Defendant Whitaker Family Trust is a limited partner in Defendant Simba Ventures Holdings, Ltd. Upon information and belief Simba Ventures Holdings, Ltd., is a defunct legal entity. Thus, defendant is liable as partner or principal of Simba Ventures. Said Defendant has been served with process and has entered an appearance in this proceeding.

8. Upon information and belief, Defendant WEL Family Trust is a limited partner in Defendant Simba Ventures Holdings, Ltd. Upon information and belief Simba Ventures is a defunct legal entity. Thus, defendant is liable as partner or principal of Simba Ventures. Said Defendant has been served with process and has entered an appearance in this proceeding.

## II.

## **JURISDICTION**

9. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, and the Order of Reference for the United States District Court for the Eastern District of Texas.

10. This action is brought pursuant to Sections 547, 548 and 550 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure. Accordingly, the claims asserted in this action constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (C) and (F).

11. Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## FACTUAL BACKGROUND

A. <u>Pre-petition Operation of Debtors</u>

12. Integra Hospital Plano, LLC ("IHP"), Integra Hospital Baton Rouge, LLC ("IHBR"), Integra Hospital Management, LLC ("IHM"), and Integra Healthcare Holdings, Ltd. ("IHH") (collectively the "Debtors") operated a rehabilitation hospital business.

13. Simba Ventures Holdings, Ltd., held 99% of the limited partnership interests in IH Holdings, which held 60% of the membership interests of IHP and 100% of the membership interests of IHBR. IHM managed the operations of IHP and IHBR. IHP and IHBR were operating hospitals.

14. Upon information and belief, Debtors were insolvent from approximately August 2007 forward. Debtors operations failed to generate sufficient revenue and cash flow to meet operating expenses and service debt obligations of the Debtors.

15. Specifically, IHP could not sustain its operations. The remaining Debtors incurred additional debt and financial obligations to support the operation of IHP. As a result, Debtors were rendered insolvent. Upon information and belief, remaining debtors transferred substantial funds to IHP in attempt to support its operation. As a result, debtors were unable to pay their debts as they matured.

16. Beginning in November 2007, Debtors began soliciting additional loans to support operation of Debtors business. Debtors negotiated a $6,000,000 Loan from Contemporary Healthcare Fund I, L.P. ("CHC"). The purposes of the CHC Loan were, among other things, to partially repay certain indebtedness that Debtors owed to Bank of Texas, to

satisfy certain back rent and real estate tax obligations of the Debtors and to pay certain of the Debtors' outstanding accounts payable, all in connection with the operations of Debtors' rehabilitation hospital business. I.e., as early as November 2007, Debtors' operations failed to generate sufficient revenue and cash flow to meet ongoing operating expenses.

17. Upon information and belief, some of this information relating to past financial performance and current operations of IH Plano was later revealed to have been false, overstated, inaccurate or misleading. Defendant David LeBlanc participated in negotiation of the Loan on behalf of Debtors. Debtors directly, and indirectly through their officers and employees including the LeBlancs, provided CHC with various information, which was relied upon by CHC and was material to its decision to close on the Loan to Debtors.

1) <u>IH Plano's Financial Performance in January 2008</u>

18. For example, upon information and belief, Debtors provided CHC with information relating to IHP's financial performance during January 2008. Upon information and belief, according to an operating statement for IHP for the month of January 2008 (the "January Financials"), which was provided to CHC on March 13, 2008 by and/or at the direction or with the authorization and/or participation of the Defendants, specifically the LeBlancs, IHP purportedly had: i) total revenue of $1,887,159; ii) total operating expenses of $1,671,742; and iii) operating margin of $215,417.

19. Upon information and belief, on May 15, 2008, Debtors provided certain financial statements relating to several Integra entities. One of the statements was an operating statement for IH Plano for the quarter ended March 31, 2008 (the "Quarterly Financials"). Upon information and belief, the Quarterly Financials revealed for the first time information about

IHP's financial performance during January 2008 that was much worse than previously represented to CHC.

20. Upon information and belief, according to the Quarterly Financials, for the month of January 2008, IH Plano had: i) total revenue of $1,380, 506; ii) total operating expenses of $1,787,218; and iii) operating margin of ($406,712) – that is a deficit of $406,712.

21. Upon information and belief, IHP's revenue figures for January 2008 went from $1,887, 159 in the January Financials to $1,380, 506 in the Quarterly Financials – a decrease in revenue of $506,653 or nearly 27% less. IHP's operating margin declined from a positive figure of $215,417 in January Financials to a negative figure of ($406,712) in Quarterly Financials – a net decrease in operating margin of $622,129.

2) <u>IH Plano's Patient Census in March and April 2008</u>

22. Upon information and belief, Debtors also provided to CHC information about the number of patients at IH Plano as of March and April 2008, which information was materially misleading. Upon information and belief, on April 3, 2008, at the direction and/or with the authorization or participation of David LeBlanc, Debtors transmitted to CHC a document that purported to show, among other things, the current number of patients at IHP. Upon information and belief, the document included patients admitted at IH Plano as either: (1) patients in IH Plano's Inpatient Rehabilitation Facility ("IRF") unit; or (2) patients in IH Plano's Skilled Nursing Unit ("SNU"), also known as Sub-Acute Rehabilitation ("SAR") patients. Upon information and belief, in general, the number of IRF or SAR patients admitted and physically present at IH Plano at any given time, was referred to as patient "census," and the combined number of IRF and SAR patients was referred to as "total census."

23. Upon information and belief, the Debtors represented that as of April 2, 2008, there were 48 IRF patients and 11 SAR patients at IH Plano, for a total census of 59. The census information was in line with similar information provided for the month of March 2008, including a total census of 59 on March 31, a peak total census of 62 on March 27 and a monthly average total census of 55.2.

24. Upon information and belief, in or about May 2008, CHC received information concerning total census at IH Plano during the full month of April. That information revealed that total census at IH Plano had dropped precipitously, from 59 patients on April 10 to only 41 patients on April 30- just 20 days later. The decline in census represented a decrease of more than 30% in less than 3 weeks.

25. Upon information and belief, Debtors, by and through officers and employees including David LeBlanc, explained that the decrease was purportedly the result of IHP's immediate need to change its IRF unit patient admission practices in order to bring IHP into compliance with a Medicare regulation (the "60% Rule"), which requires that 60% of the patients in an IRF have one or more of 13 specified conditions. Compliance with the 60% Rule affects an IRF's eligibility to participate in certain reimbursement programs under Medicare.

26. Upon information and belief, IHP had not properly managed IRF patient admissions from the inception of operations in August 2007 through April 2008 so as to comply with the 60% Rule. Upon information and belief, IHP had admitted an excessive percentage of patients to the IRF-unit who did not have at least one of the Medicare-specified conditions. Upon information and belief, as a result, for several months beginning in late April 2008, IHP had to deny admission to a substantial number of patients who lacked the required Medicare conditions, so that IHP would become compliant with the 60% Rule on an average, annualized basis for its

first full year of operations, which ended in August 2008. Upon information and belief, as a result, IHP operating revenue was reduced, and it was unable to support ongoing operating expenses.

B.  Transfers to Simba Ventures

27. Upon information and belief, beginning November 2007 through the Petition Date, Debtor IHP transferred in excess of $11,593,385.77 ("Transfers") to Defendant Simba Ventures Holding, for the benefit of defendants. The Transfers are specifically identified on attached Exhibit "A".

28. Upon information and belief, individual defendants were the intermediate or mediate transferee of the Transfers, or the person for whose benefit the Transfers were made. Thus, the Trustee is entitled to recover the Transfers from Defendants pursuant to 11 U.S.C. § 550(a).

29. Alternatively, Defendants are personally liable as partners or principals of Simba Ventures Holdings. Upon information and belief, Simba Ventures Holdings, Ltd has forfeited its existence and is a defunct legal entity.

C.  The Bankruptcy Cases

30. On November 5, 2008 (the "Petition Date"), IHP, IHBR, IHM and IHH (individually or collectively referred to as "Debtors") commenced these cases by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

31. Thereafter, the Debtors continued to operate their businesses as Chapter 11 debtors in possession until the Court entered an Order converting the cases to Chapter 7 on

March 31, 2009 and Plaintiff was thereafter appointed the Chapter 7 Trustee of the bankruptcy estates, and has since continued to serve in that capacity.

## IV.
## AVOIDANCE OF PREFERENTIAL TRANSFERS
## PURSUANT TO SECTION 547

32. The Trustee incorporates and realleges the factual allegations contained in paragraphs 1 through 31.

33. Defendants are each insiders of Debtors within the meaning of 11 U.S.C. § 101(31)Within one year prior to the filing by Debtors of the bankruptcy, Debtor made the transfers identified on Exhibit A to or for the benefit of creditors or on account of an antecedent debt owed by Debtor before the transfers.

34. The Transfers (1) were transfers of an interest of the Debtor in property; (2) were made to or for the benefit of Defendants, creditors of the Debtor; (3) were made for or on account of an antecedent debt owed by the Debtor to Defendants before such transfers were made; (4) were made while the Debtor was insolvent; (5) were made on or within one year before the Petition Date; and (6) enabled the Defendants to receive more than the Defendants would receive if the Debtors case was a case under Chapter 7 of the Bankruptcy Code, the Transfers had not been made, and the Defendants received payment of the aforementioned debts to the extent provided by the provisions of the Bankruptcy Code.

35. All of the above-described transfers are preferences voidable by the Trustee pursuant to provisions of 11 USC § 547 and are recoverable by the Trustee pursuant to 11 USC § 550.

# V.

## FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548

36. The Trustee incorporates and realleges the factual allegations contained in paragraphs 1 through 35.

37. The Debtor voluntarily or involuntarily transferred an interest of the Debtor in property, specifically identified in Exhibit "A". The Trustee alleges that the Debtors, with participation and/or authorization of Defendants, made the Transfers with actual intent to hinder, delay, or defraud creditors.

38. Alternatively, the Debtor received less than a reasonably equivalent value in exchange for Transfers; the Debtor was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; or was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was unreasonably small capital; or intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

39. Specifically, Debtor's operations failed to generate sufficient revenue and cash flow to meet operating expenses and service debt obligations of the Debtor. Nevertheless, the Debtor transferred $11,593,385.77 to Defendant Simba Ventures Holding, an insider of the Debtor, for the benefit of Defendants. As a result, Debtor was unable to pay their debts as they matured.

40. All of the above-described transfers are voidable by the Trustee pursuant to provisions of 11 USC § 548 and are recoverable by the Trustee pursuant to 11 USC § 550.

# VI.
# RECOVERY OF FUNDS
# PURSUANT TO SECTION 550(a)

41. The Trustee incorporates and realleges the factual allegations contained in paragraphs 1 through 40.

42. As set forth above, the Transfers are avoidable pursuant to Section 547 and 548 of the Bankruptcy Code.

43. Recovery of the Funds or the value of the funds from the Defendants will benefit the Debtors' estates.

44. Each Defendant is the initial transferee of the Transfers, the intermediate or mediate transferee of the Transfers, or the person for whose benefit the Transfers were made.

45. Therefore, the Plaintiff is entitled to the entry of an order and judgment against the Defendants entitling her to recover the Funds, or the value of the Funds, and all other related relief, including but not limited to, interest as of the date of the Transfers, and the costs of this Adversary Proceeding (the "Recovery"). 11 U.S.C. § 550(a).

# VII.

## DISALLOWANCE OF CLAIMS ASSERTED BY DEFENDANTS
## PURSUANT TO SECTION 502(d)

46. The Trustee incorporates and realleges the factual allegations contained in paragraphs 1 through 45.

47. As set forth above, each Defendant is the transferee of the Transfers, which are avoidable and should be avoided pursuant to Bankruptcy Code § 547. Further, Plaintiff is entitled to recover the Funds transferred, or the value thereof, pursuant to Bankruptcy Code § 550(a).

48. Accordingly, the Plaintiff is entitled to the entry of an order disallowing any claim of the Defendant against one or more of Debtors pursuant to Bankruptcy Code § 502(d), unless the Defendant pays the amount of the Recovery, or turns over any property as the Court may order, to the Plaintiff.

WHEREFORE, PREMISES CONSIDERED Trustee prays that this Court render judgment that the transfers to each respective defendant be avoided; that the Trustee recover from each defendant the amount transferred, together with her costs, including reasonable attorneys fees, pre-judgment and post-judgment interest as allowed by law; that the pre-petition claim of each respective defendant be disallowed pursuant to 11 USC § 502(d) if the amount due is not repaid; and that the Trustee have such other and further relief to which she is entitled.

Respectfully submitted,

/s/ Mark A. Weisbart
Mark A. Weisbart
Texas Bar No. 21102650
12770 Coit Road, Suite 541
Dallas, Texas 75251
Tel: (972) 628-3694
Fax: (972) 628-3687
weisbartm@earthlink.net

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via ECF notification on the following on this 12th day of January, 2011.

Greg Westfall
Hill Gilstrap, P.C.
1400 West Abram St.
Arlington, Tx 76013

/s/ Mark A. Weisbart
Mark A. Weisbart